UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                :

            - v. -                      :     S4 09 Cr. 1082 (RMB)

EDUARDO ESCALERA and                    :
DAVID ESCALERA,
                                        :
            Defendants.
                                        :
- - - - - - - - - - - - - - - - - -x


# GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DAVID ESCALERA'S MOTION FOR SEVERANCE


                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        One St. Andrew's Plaza
                        New York, New York 10007


TIMOTHY D. SINI
JUSTIN ANDERSON
Assistant United States Attorney
     -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant David Escalera ("David")'s motion to sever his and his co-defendant Eduardo Escalera ("Eduardo")'s trial.  David and Eduardo Escalera are charged in a superseding indictment with conspiring to distribute and possess with intent to distribute methamphetamine, in a form commonly known as "crystal meth," in violation of Title 21, United States Code, Section 846. There is a strong presumption for providing defendants who are indicted together with joint trials, particularly where, as here, the crime charged involves a common scheme between the defendants, and much of the evidence against each defendant is the same.  In order to rebut this strong presumption, a defendant must show that he would be so prejudiced by joinder that he would be denied a fair trial.  For the reasons set forth below, the defendant's application falls far short of meeting this burden.

Courts routinely deny motions for severance when, as here, much of the evidence that would be admitted at a joint trial would be admissible at a separate trials.  David argues, however, that severance is warranted because the Government will introduce at a joint trial evidence of Eduardo's prior conviction of possession with intent to distribute methamphetamine, which is not admissible against David.  However, the Government anticipates introducing evidence in its case-in-chief of the conduct underlying this conviction, in particular Eduardo's possession of crystal meth and other narcotics for sale in January 2008 at a Los Angles nightclub. Because this evidence constitutes direct evidence of both of the defendants' participation in the charged conspiracy, the Government would introduce it against David even at a severed trial.

In addition,  the Government expects to introduce evidence of Eduardo's

admission made during his plea allocution in connection with his arrest for the possession of

crystal meth and other narcotics in January 2008. This too does not warrant severance. Courts in

this circuit and elsewhere have generally rejected the argument that the admission of

incriminating statements by one defendant warrants substantial prejudice to a co-defendant.

Courts routinely provide limiting instructions that such evidence is admissible against only the

defendant who made the statement.

     Finally, David suggests that severance is warranted because the evidence against

him is less substantial than the evidence against Eduardo. This is typically not a ground for

severance. In any event, there is no notable distinction in the strength of the proof against either

defendant in this case. Indeed, the Government expects to introduce several items of evidence

relating specifically to David, including that he was arrested in this case with methamphetamine

in his possession, made incriminating post-arrest statements, sent incriminating text messages to

a cooperating witness, and possessed a cellular telephone containing text messages implicating

him in narcotics trafficking. Under these circumstances, David has not carried his burden of

showing that joinder would result in prejudice sufficiently severe to outweigh the need to

conserve judicial resources, alleviate the burden on citizens serving as jurors, and avoid the

necessity of having witnesses reiterate testimony in multiple trials. Accordingly, David's motion

for severance should be denied.

## FACTUAL BACKGROUND

     David Escalera is charged, along with his brother Eduardo, in a one-count

indictment with conspiring to distribute 500 grams and more of mixtures and substances

containing a detectable amount of methamphetamine, in a form commonly known as "crystal

meth," from at least in or about August 2006 up to and including in or about August 2009, in

violation of Title 21, United States Code, Sections 812, 841(a), 841(b)(1)(A), and 846.

In July 2009, the Drug Enforcement Administration ("DEA") arrested a crystal

meth dealer operating in New York and California, who shortly after his arrest began cooperating

with law enforcement (the "CW").  The CW informed law enforcement that David and Eduardo

Escalera were his suppliers of methamphetamine.  In or about late July and early August 2009,

immediately subsequent to his arrest by the DEA, the CW agreed to make consensually recorded

telephone calls and text messages to David and others described by the CW as the source of

crystal meth supply for David and Eduardo.  Specifically, on or about August 3, 2009, at the

DEA's direction, the CW exchanged a series of telephone text messages with David.  The CW

received an incoming text message from David asking "bro what do you need."  The CW and

David then exchanged a series of text messages in which the CW requested a pound of crystal

meth – which the CW referred to as "Kl33r" (i.e., "clear") and David referred to as "glass" –

which David agreed to provide in exchange for $20,000.  Over the course of several months, the

CW continued to provide information to law enforcement during proffer sessions about  his

crystal meth operation, which implicated David and Eduardo as his suppliers.

On or about May 11, 2010, law enforcement officers ("Officers") were tracking

GPS signals emanating from a cellular telephone – which is assigned call number 323-244-7373

and is subscribed in David's name (the "Phone") – in  order to locate and arrest him.   Agents

were acting pursuant to an arrest warrant issued on the basis of a criminal complaint authorized

by a United States Magistrate Judge in this district charging both Escalera brothers with a

narcotics distribution conspiracy.  After observing the GPS signal appear to make a series of

stops in a number of different areas of Los Angeles, Officers observed David driving a car and followed him.  Though they subsequently lost sight of him, Officers later located the car, with no occupants, near a park in Los Angeles.  A foot search of the park revealed that David was at a playing field inside the park watching a sporting event.  The Officers approached David, announced themselves to him quietly, and gave David an opportunity to walk away from the gathered spectators so that he could be arrested with as much privacy as possible.  Pursuant to David's arrest, Officers conducted a search of his person, and seized, among other items, the Phone, keys to the car and $3,051 in bills of large denominations.

After being read his Miranda rights, David indicated that he understood his rights, and waived them orally.   He was placed in a marked police car, which was driven to the area where the car had previously been observed parked without occupants.  There, an agent exited the patrol car, and entered David's car using keys seized from David in order to drive the car back to a DEA facility.  Inside, the agent discovered a small bag containing two small clear baggies of suspected narcotics, which he seized from a cupholder in the center console of the car. The contents of the bag were later tested by a DEA laboratory and determined to consist of approximately two grams of approximately 99% pure crystal meth.  The marked police car transporting David proceeded to the same DEA facility.  During transport and after being processed at the DEA facility, in response to questioning by agents, David stated, in sum and substance and among other things, the following: (1) "glass" is a term referring to crystal meth; (2) he knew the CW assisting the DEA in its investigation because they were friends and that he had allowed the CW to borrow money for a business venture that the CW still owes to him; (3) he has used narcotics with the CW in the past; (4) he did not supply the CW with narcotics, but

provided the name of another individual who he knew did supply the CW with narcotics; and (5) he was in possession of a large sum of money that was going to be used for a trip to Mexico.

Pursuant to a search warrant issued by a United States Magistrate Judge in this district, the DEA searched the Phone, which was recovered from David at the time of his arrest. The search revealed that the Phone contains incriminating evidence that implicates David in narcotics trafficking. For example, the Phone contains the following messages:

"Can you bring the e now?"

"I got that thing 4 u."

"Yo cuzz can u stop by the spot and make a drop?"

"[C]an you have that e for me please today."

A DEA report containing the results of the search of the Phone has been produced to the defendants and the Court.

Joint trial in the case of David and Eduardo Escalera is set to commence on October 4, 2011. At the last conference held on September 12, 2011, the Court granted the Government's motion in limine to introduce evidence of Eduardo Escalera's possession with intent to distribute methamphetamine in 2008 and his conviction arising from that conduct. In addition, the Court denied David's motion to suppress the results of the DEA's search of the Phone. At the conference, defense counsel for David indicated his intention to file the instant motion, which he filed on September 15, 2011.

## DISCUSSION

### A.   Legal Standard

The Supreme Court has made plain that there is a "preference in the federal

system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S.

534, 537 (1993); see Fed. R. Crim. P. 8(b). This preference reflects a settled precept in criminal

law:

> Joint trials "play a vital role in the criminal justice system."
> Richardson v. Marsh, 481 U.S. 200, 209 (1987). They promote
> efficiency and "serve the interests of justice by avoiding the
> scandal and inequity of inconsistent verdicts." Id. at 210.

 Zafiro, 506 U.S. at 537. Joint trials of defendants indicted together also serve to "conserve

prosecutorial resources, diminish inconvenience to witnesses, and avoid delays in the

administration of criminal justice." Richardson v. Marsh, 481 U.S. 200, 217 (1987) (Stevens, J.,

dissenting). The Richardson Court explained:

> It would impair both the efficiency and the fairness of the criminal
> justice system to require . . . that prosecutors bring separate
> proceedings, presenting the same evidence again and again,
> requiring victims and witnesses to repeat the inconvenience (and
> sometimes trauma) of testifying, and randomly favoring the
> last-tried defendants who have the advantage of knowing the
> prosecution's case beforehand. Joint trials generally serve the
> interests of justice by avoiding inconsistent verdicts and enabling
> more accurate assessment of relative culpability — advantages
> which sometimes operate to the defendant's benefit.

Id. at 210 (footnote omitted). Thus, even where joint trials invite some prejudice to defendants,

"[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the

conservation of time, money, and scarce judicial resources that a joint trial permits." United

States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

The presumption in favor of joint trials is so strong that the Second Circuit has

stated that "[t]he principles that guide the district court's consideration of a motion for severance

usually counsel denial." United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). A defendant

seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial.  United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted).  It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]."  Zafiro, 506 U.S. at 540.  Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. at 539; see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").  Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539 (citing Richardson, 481 U.S. at 211); see also United States v. Freyer, 333 F.3d 110, 114 (2d Cir. 2003).

The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme."  United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998).  See also Freyer, 333 F.3d at 114 (holding that joinder of defendants is "proper when the alleged acts are 'unified by some substantial identity of facts or participants and a common plan.'" (quoting United States v. Attenasio, 870 F.2d 809, 815 (2d Cir. 1989))); United States v. Bin Laden, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all defendants." (footnote omitted)), aff'd, 552 F.3d 93 (2d Cir. 2008), cert. denied, 129 S. Ct. 2778

(2009); United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999 ("[T]he cases are legion

that there is a strong public interest in joint trials where, as here, the defendants are both charged

in the same conspiracy."); see also United States v. Blackshear, 313 F. Appx. 338, 342 (2d Cir.

2008) ("This rule makes severance rare in conspiracy cases where the 'government [is] . . .

entitled to show the entire range of evidence of the conspiracy against each appellant,' even

where 'one appellant's role in the conspiracy may have been smaller or less central than that of

certain other co-conspirators.'" (quoting United States v. Nersesian, 824 F.2d 1294, 1304 (2d

Cir.1987))).

            In conspiracy cases, especially, any claim of "prejudicial spillover" does not

justify severance where, as here, the evidence would be admissible at a separate trial of the

moving defendant.  As the Second Circuit has recognized:

>    the fact that testimony against a codefendant may be harmful is not
>    a ground for severance if that testimony would also be admissible
>    against the moving defendant tried separately. Evidence at the joint
>    trial of alleged coconspirators that, because of the alleged
>    conspiratorial nature of the illegal activity, would have been
>    admissible at a separate trial of the moving defendant is neither
>    spillover nor prejudicial.

Rosa, 11 F.3d at 341 (citations omitted).  When the challenged evidence is admissible against

both defendants, it cannot be considered either "spillover" or "prejudicial."

            Even where evidence is admissible against only one defendant in a multi-

defendant case, severance is not automatically granted.  The Second Circuit has repeatedly

recognized that "the fact that evidence may be admissible against one defendant but not against

another does not necessarily require a severance."  United States v. Carson, 702 F.2d 351, 367

(2d Cir. 1983); see also United States v. Losada, 674 F.2d 167, 171 (2d Cir. 1982); United States

v. Lyles, 593 F.2d 182, 190 (2d Cir. 1979). Any spillover prejudice that may occur is generally corrected by the Court's instruction that the jury consider the guilt of each defendant individually – an instruction that jurors are presumed to be able to follow. United States v. Potamitis, 739 F.2d 784, 790 (2d Cir. 1984); see also United States v. Lasanta, 978 F.2d 1300, 1307 (2d Cir. 1992) ("[t]he district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant"); United States v. Zackson, 6 F.3d 911, 922 (2d Cir. 1993).

Even assuming that a particular defendant is somehow prejudiced by joinder with a co-defendant, the standard under Federal Rule of Criminal Procedure 14 is not whether there is any prejudice, but whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Panza, 750 F.2d at 1149 (emphasis added). The presumption in favor of joint trials thus "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." Lyles, 593 F.2d at 191 (internal quotation marks omitted); United States v. Corr, 543 F.2d 1042, 1052 (2d Cir. 1976).

**B.    Application**

Here, David has failed to provide the Court with an adequate basis to order the severance of his trial from his co-defendant. It is clear that the defendants "are alleged to have participated in a common plan or scheme," Salameh, 152 F.3d at 115, and much of the evidence against Eduardo Escalera is equally admissible against David Escalera, Rosa, 11 F.3d at 341 ("the fact that testimony against a co-defendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately."). In this

-9-

case, the evidence includes the testimony of the CW and another witness, who are expected to testify about their crystal meth operation and how the Escalera brothers supplied them with large quantities of narcotics.  It is likely that a critical strategy of both the defense of Eduardo and David will be to impeach the credibility of these witnesses.  In addition, the Government will seek to introduce evidence of Eduardo's possession of crystal meth for sale in January 2008 against both defendants as proof of the conspiracy.[1]  See United States v.  Salameh, 152 F.3d 88, 111 (2d Cir. 1998) ("Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant.").  Thus, because most, if not all, of the evidence against Eduardo would also be admitted against David in a severed trial, there is no basis for severance.  See United States v. Blackshear, 313 F. Appx. 338, 342 (2d Cir. 2008) ("All of the evidence McDonnell complains prejudiced her would have been admissible against her in a separate trial, since all of the evidence related to the conspiracy. Accordingly, we reject her argument that the district court erred in denying her severance motion."); United States v. Aref, 285 F. App'x 784, 791 (2d Cir. 2008).  Under these circumstances, severance in this case would run afoul of the warning of the Supreme Court in Richardson, 481 U.S. at 210, by impairing the efficiency of the criminal justice system in requiring prosecutors to "present[] the same evidence again and again[,] . . . randomly favoring the last-tried defendants."

   Severance is also not warranted in the event that the Government introduces into

---

[1]   On or about January 20, 2008, Eduardo was arrested for various narcotics charges, including possession of methamphetamine for sale, for which he pled guilty on or about May 19, 2008.  On the night of his arrest Escalera was approached by a law enforcement officer who observed him smoking marijuana in a nightclub, and found Escalera to be in possession of four baggies of crystal meth, along with ten baggies of cocaine.  Escalera pled guilty to possession of methamphetamine for sale, and was sentenced to 180 days in jail and three years' probation.

evidence Eduardo's admission made during his plea allocution. Courts in this circuit and

elsewhere have generally not found the admission of evidence of prior criminal activity or

statements made by one defendant to constitute substantial prejudice to a co-defendant.[2] United

States v. Jass, 569 F.3d 47, 55-64 (2d Cir. 2009); In re Terrorist Bombings of U.S. Embassies in

East Africa, 552 F.3d 93, 135-37 (2d Cir. 2008); United States v. Blackshear, 313 Fed. Appx.

338, 343-44 (2d Cir. 2008); United States v. Taylor, 767 F. Supp.2d 428, 431-33 (S.D.N.Y.

2010); United States v. Abcasis, 785 F. Supp. 1113, 1112 (E.D.N.Y. 1992) (citing United States

v. Dalzatto, 603 F.2d 642, 646 (7th Cir.), cert. denied, 444 U.S. 994 (1979); United States v.

Rosenwasser, 550 F.2d 806, 808 (2d Cir.), cert. denied, 434 U.S. 825 (1977); United States v.

Bazinet, 462 F.2d 982, 992 (8th Cir.), cert. denied, 409 U.S. 1010 (1972); United States v. Egan,

501 F. Supp. 1252 (S.D.N.Y. 1980)). "In these cases, the trial court's limiting instructions have

been held sufficient to preserve the co-defendant's right to a fair trial." Id. (citing Rosenwasser,

550 F.2d at 880; Egan, 501 F. Supp. at 1262). For example, in United States v. Ezeh, the Second

Circuit held that the district court did not err when it denied severance of a trial where the

Government introduced the co-defendant's prior conviction of a crime similar to the one charged,

---

[2]        David cites United States v. Figueroa, 618 F.2d 934 (2d Cir. 1980), where the Second
Circuit found error in the district court's admission of evidence of a co-defendant's prior conviction.
Figueroa is entirely distinguishable. First, as noted, the Government in this case does not intend to
introduce Eduardo's conviction itself as proof of the conspiracy. Second, the evidence in Figueroa
case consisted solely of the testimony of a law enforcement officer's observations; there was no
phone records, co-conspirator testimony, lab reports, or other corroborating evidence, as there is in
this case. As a result, the Second Circuit emphasized that "[t]he case turned on the credibility of one
witness," and thus the prejudicial effect of the admission of the conviction was magnified. Figueroa,
618 F.2d at 947. Finally, the Second Circuit found that the there was "a risk in this case that
interventions and comments by the trial judge may have influenced the jury to deprecate defendants'
attack on [the law enforcement witness's] credibility." Id. None of these circumstances are present
in this case.

as well as incriminating statements made to law enforcement by the co-defendant, because the

court gave appropriate limiting instructions to the jury.  92 F. Appx. 834, 836-37 (2d Cir. 2004);

see also United States v. Carson, 702 F.2d 351, 367 (2d Cir.1983) ("[A] judge's instructions to

the jury to assess each defendant separately supports a finding of no spillover prejudice.");

United States v. Bernard, 97 CR 48 (AHN),1998 WL 241205, at *7 (D. Conn. April 2, 1998)

(citing United States v. Lopez, 979 F.2d 1024, 1036 (5th Cir.1992), cert. denied sub nom.

Ramirez v. United States, 508 U.S. 913 (1993); United States v. Molinares Charris, 822 F.2d

1213, 1221 (1st Cir.1987); United States v. Cabal, No. 92 Cr. 108 (LLS), 1992 WL 110738, at

*2–3 (S.D.N.Y. May 13, 1992)).  Thus, if the Government introduced evidence of Eduardo's

admission at a joint trial, a limiting instruction that the evidence could be used against only

Eduardo would suffice to ensure that David is not prejudiced.  This is particularly true here,

where there is no indication that a jury could not or would not consider this evidence against only

David, given that Eduardo's admission does not implicate David.  See United States v. Vargas,

702 F. Supp. 70, 75 (S.D.N.Y. 1988).

      Finally, David appears to suggest in his motion that he will suffer from "spillover

prejudice" by joinder because the evidence against Eduardo is stronger than the evidence against

him.  First, as noted, much of the evidence against Eduardo would be introduced against David at

a severed trial, a fact that militates strongly against severance.  See Rosa, 11 F.3d at 341.

Moreover, "'[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial

and, standing alone, are insufficient grounds for separate trials.'"  United States v. Spinelli, 352

F.3d 48, 55 (2d Cir. 2003) (quoting Carson, 702 F.2d at 366-67).  "Even 'joint trials involving

defendants who are only marginally involved alongside those heavily involved are

constitutionally permissible.'" Id. (quoting United States v. Locascio, 6 F.3d 924, 947 (2d Cir.1993)).  Although the Second Circuit has recognized that "[t]here are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice," id., this is clearly not such a case.

    While the Government believes that the evidence against each defendant is equally strong, the fact remains that there exists several items of evidence that the Government expects to introduce that relate specifically to David.  In particular, the Government expects to introduce evidence that: (1) when David was arrested in this case, DEA recovered methamphetamine from his vehicle; (2) David made incriminating post-arrest statements, stating that he knew the CW, that he had done drugs with the CW, he knew who supplied CW narcotics, and that "ice" is code for "crystal meth"; (3) prior to his arrest, David sent text messages to the CW that indicate that he intended to supply a large quantity of "crystal meth" to the CW; and (4) David's phone, which the DEA recovered from him at the time of his arrest, contained text messages implicating him in narcotics trafficking.  Under these circumstances, David cannot make any showing of "spillover prejudice" that would warrant the severance of trial.  Even if David has made some showing of "spillover prejudice," which he clearly has not, any such spillover prejudice may be remedied through a jury instruction that the jury consider the defendants' guilt individually.  See Spinelli, 352 F.3d at 55; United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997).

    At bottom, David has not shown that joinder would cause him substantial prejudice sufficient to override the presumption of a joint trial.  See United States v. Potamitis,

-13-

739 F.2d 784, 790 (2d Cir.1984) ("substantial prejudice" does not mean a "better chance of acquittal" but an actual "miscarriage of justice").  Here, as in most cases, "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together." <u>Spinelli</u>, 352 F.3d at 55.[3]

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's motion for severance should be denied.

Dated:  New York, New York
        September 16, 2011

Respectfully submitted,

PREET BHARARA
United States Attorney


By:     _____
        TIMOTHY D. SINI
        JUSTIN ANDERSON
        Assistant United States Attorneys
        (212) 637-2358 / -1035


cc:     Lloyd Epstein, Esq. (by e-mail and ECF)
        Louis Aidala, Esq. (by e-mail and ECF)

---

[3]     For the same reasons, the Government respectfully submits that David has not made a sufficient showing justifying the expense and inconvenience of using two juries in this case.

-14-

CERTIFICATE OF SERVICE

JUSTIN ANDERSON deposes and says that he is employed in the Office of the

United States Attorney for the Southern District of New York.

That on September 16, 2011, he caused to be served a copy of the foregoing

Government's Opposition to Defendant's Motion for Severence, by filing it via Electronic Filing,

thereby sending notice to all Counsel of Record.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C.

Section 1746.


_____

JUSTIN ANDERSON


Executed on:   September 16, 2011
               New York, New York